IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

WANDA SINEATH,                )
                              )
            Plaintiff,        )
                              )
       v.                     )    1:16CV28
                              )
CAROLYN W. COLVIN,            )
Acting Commissioner of Social Security, )
                              )
            Defendant.        )

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Wanda Sineath, seeks review of a final decision of the Commissioner of Social Security denying her claims for a Period of Disability and Disability Insurance Benefits ("DIB") and Social Security Income ("SSI"). The Court has before it the certified administrative record and cross-motions for judgment. (Docket Entries 6, 9, 11, 13.) For reasons discussed below, it is recommended that Plaintiff's motion for judgment reversing the Commissioner (Docket Entry 9) be denied, Defendant's motion for judgment on the pleadings (Docket Entry 11) be granted, and that the Commissioner's decision be affirmed.

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI on October 17, 2012, alleging a disability onset date of June 19, 2012. (Tr. 171-183.)[1] Her applications were denied initially and upon

---

[1] Transcript citations refer to the sealed administrative record which was filed with Defendant's Answer. (Docket Entry 8.)

1

reconsideration. (Tr. 76-77, 100-01.) Thereafter, Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. 133-34.) Plaintiff, her attorney, and a vocational expert appeared at the hearing on March 28, 2014. (Tr. 23-55.) A decision was issued on June 16, 2014, upholding the denial of Plaintiff's application for DIB and SSI. (Tr. 9-22.) On November 17, 2015, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's determination the Commissioner's final decision for purposes of judicial review. (Tr. 1-4.)

## II. STANDARD OF REVIEW

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue before the Court, therefore, is not whether Plaintiff is disabled but whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Id.*

## III. THE ALJ'S DISCUSSION

The ALJ followed the well-established five-step sequential analysis to ascertain whether Plaintiff is disabled, which is set forth in 20 C.F.R. § 404.1520 and 416.920. *See Albright v.*

*Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). In rendering his disability determination, the ALJ made the following findings later adopted by Defendant:

1. The claimant meets the insured status requirements of the Social Security Act [the "Act"] on December 31, 2016.

2. The claimant has not engaged in substantial gainful activity since June 19, 2012, the alleged onset date (20 CFR 404.1571 *et seq.*, and 20 CFR 416.971 *et seq.*).

3. The claimant has the following severe impairments: degenerative joint disease of the right hip, lumbar spinal stenosis, carpal tunnel syndrome, and obesity (20 CFR 404.1520(c) and 20 CFR 416.920(c)).

   . . . .

4. The claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

   . . . .

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 20 CFR 416.967(b) with additional limitations. Specifically, the claimant can lift or carry up to 20 pounds occasionally and 10 pounds frequently. She can sit, stand, or walk, each for up to 6 hours in a normal 8-hour day, but requires a sit/stand option at 60-minute intervals. The claimant can occasionally push or pull with the right lower extremity, and can frequently handle with the bilateral upper extremities. She can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs, but never climb ladders, ropes or, scaffolds. She must avoid concentrated exposure to workplace hazards such as dangerous moving machinery and unprotected heights.

(Tr. 11-14.)

In light of the above findings regarding Plaintiff's RFC, the ALJ determined that Plaintiff was unable to perform her past work as an injection molding machine operator. (Tr. 21.) Based upon Plaintiff's age, education, work experience, and her RFC, the ALJ concluded that "there were jobs that existed in significant numbers in the national economy that the claimant could have performed." (*Id.* (citing 20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)). Accordingly, the ALJ concluded that Plaintiff was not disabled. (Tr. 22.)

## IV. ANALYSIS

Plaintiff contends that the Commissioner erred in determining that she was not disabled for purposes of the Act. (Docket Entry 10). Plaintiff raises three arguments.[2] First, Plaintiff contends that the ALJ conducted an improper credibility analysis. (*Id.* at 4-12.) Second, Plaintiff contends that "[t]he ALJ erred by failing to perform a function by function assessment of relevant, contested functions when assessing the RFC." (*Id.* at 12-14.) Lastly, Plaintiff argues that the ALJ erred in his assessment of the medical opinion evidence. (*Id.* at 14-16.)

### A. The ALJ Conducted a Proper Credibility Analysis

First, Plaintiff contends that the ALJ's credibility analysis requires remand. (*Id.* at 4-12). The Fourth Circuit Court of Appeals has adopted a two-step process by which the ALJ must evaluate a claimant's symptoms. The first step requires the ALJ to determine if the

---

[2] While Plaintiff organized her claims into two separate arguments, Plaintiff's function by function assessment claim can be separated into two different issues.

4

claimant's medically documented impairments could reasonably be expected to cause the claimant's alleged symptoms. *Craig*, 76 F.3d at 594. The second step includes an evaluation of subjective evidence, considering the claimant's "statements about the intensity, persistence, and limiting effects of [the claimant's] symptoms." *Id.* at 595 (citing 20 C.F.R. §§ 416.929(c)(4) and 404.1529(c)(4)). "The ALJ must consider the following: (1) a claimant's testimony and other statements concerning pain or other subjective complaints; (2) claimant's medical history and laboratory findings; (3) any objective medical evidence of pain; and (4) any other evidence relevant to the severity of the impairment." *Grubby v. Astrue*, No. 1:09cv364, 2010 WL 5553677, at *3 (W.D.N.C. Nov. 18, 2010) (unpublished) (citing *Craig*, 76 F.3d at 595; 20 C.F.R. § 404.1529(c)). "Other evidence" refers to factors such as claimant's daily activities, duration and frequency of pain, treatment other than medication received for relief of symptoms, and any other measures used to relieve claimant's alleged pain. *Id.* Moreover, SSR 96–8p requires that:

> The adjudicator must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC. Careful consideration must be given to any available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by objective medical evidence alone.

SSR 96-8P, 1996 WL 374184, at *5. Similarly, in determining the credibility of a claimant, SSR 96–7p, instructs the ALJ to "consider the entire case record" and requires a credibility determination to "contain specific reasons for the finding on credibility, supported by the evidence in the case record[.]" SSR 96–7p, WL 374186 at *2. An ALJ's credibility finding is entitled to "substantial deference." *Sayre v. Chater*, No. 95–3080, 1997 WL 2.32305, at *1

5

(4th Cir. May 8, 1997) (unpublished).

In this case, upon completing the two-step *Craig* analysis, as laid out in his determination, the ALJ sufficiently explained his reasoning with respect to Plaintiff's subjective allegations giving several reasons for not finding Plaintiff credible. (Tr. 19.) The ALJ begins his analysis by acknowledging Plaintiff's diagnoses for osteoarthritis of the bilateral hips and spinal stenosis but notes that "the exact etiology of [Plaintiff's] pain remains unclear." (*Id.*) The ALJ also states that there were a number of references to x-rays and MRIs and descriptions of Plaintiff's degenerative joint disease ranging from mild to severe but the studies are not part of the record. (*Id.*) Further, the ALJ notes that both of Plaintiff's hips have full strength and are neurovascularly intact. (*Id.*) Next, the ALJ reasoned that despite Plaintiff's sparing use of pain mediation she was still able to do "light housework, laundry, and prepare meals." (*Id.*) Next, the ALJ noted Plaintiff was not further treated for her carpal tunnel syndrome aside from being prescribed splinting previously. The ALJ also reasoned that there were no opinions from consultative examinations or third parties regarding specific functional limitations imposed by Plaintiff's impairments. The Court is able to "trace the path" of the ALJ's reasoning for finding Plaintiff not entirely credible. *Id.*; *Able v. Colvin*, No. 1:14CV1078, 2016 WL 1229086, at *6 (M.D.N.C. Mar. 28, 2016) (unpublished) (concluding that the ALJ's analysis of the claimant's credibility provided multiple reasons for finding the claimant not entirely credible and complied with *Craig* by allowing the Court to "trace the path" of the ALJ's reasoning); *Cummings v. Colvin*, No. 1:14CV00520, 2016 WL 698081, at *6 (M.D.N.C. Feb. 19, 2016) (unpublished) (concluding that the ALJ's thorough discussion of

6

the plaintiff's testimony with respect to daily activities provided a logical bridge between the plaintiff's daily activities and the ALJ's conclusion that the plaintiff lacked creditability regarding the impact of her disabling symptoms); *Miller v. Colvin*, No. 1:14CV948, 2016 WL 430496, at *4 (M.D.N.C. Feb. 3, 2016) (unpublished) (the ALJ conducted a proper credibility analysis by assessing all evidence including the claimant's testimony, activities of daily living, and specific inconsistencies regarding the claimant's complaints of disabling symptoms and limitations).

Plaintiff argues that the ALJ's reliance on Plaintiff's ability to conduct activities of daily living do not bear a meaningful relationship to the activities of the workplace. (Docket Entry 10 at 8.) However, as noted above, activities of daily living is a factor that is considered when evaluating credibility. *Byas*, 2015 WL 3791444, at *3; *Craig*, 76 F.3d at 595. Furthermore, Plaintiff's hearing testimony regarding activities of daily living are inconsistent with other statements made by Plaintiff in the record. In a functional report Plaintiff stated that she can walk in a store for up to 30 minutes. (Tr. 234.) However, at the hearing, Plaintiff testified to only being able to walk 10 to 15 steps in the grocery store without getting tired. (Tr. 37). Moreover, in a functional report, Plaintiff stated she is able to do light cleaning, laundry and cooking while sitting down. However, at the hearing, Plaintiff testified that she does not do chores. (Tr. 38.) Thus, the ALJ properly considered Plaintiff's activities of daily living and, in some instances, Plaintiff's hearing testimony is inconsistent with other evidence in the record.

Plaintiff also contends that the ALJ should have requested that the x-rays and MRIs be

7

produced since the ALJ acknowledged their absence as one of the reasons for finding the Plaintiff not entirely credible in his analysis. (Docket Entry 10 at 6-7.) Plaintiff further contends that it is the ALJ's duty to develop the record. "The ALJ's duty to further develop the record arises when an inconsistency or conflict in the evidence requires resolution or when insufficient evidence exists to assess an impairment." *Martin v. Colvin*, No. 1:14CV516, 2015 WL 5944455, at *4 (M.D.N.C. Oct. 13, 2015); 20 C.F.R. §§ 404.1519a(b), 416.919a(b).

Here, the ALJ did not have to further develop the record because he had enough information about the x rays and MRIs to evaluate and draw a conclusion about the severity of Plaintiff's impairments. While the ALJ did not have the actual imaging studies, the medical record did provide information regarding the results of the studies. (Tr. 284, 322, 340, 355, 391.) Moreover, the ALJ noted that the x rays, MRIs, and descriptions of Plaintiff's degenerative joint disease ranged from mild to severe. Inconsistent lab reports and medical findings are factors evaluated to assess credibility. *Craig*, 76 F.3d at 595. Thus, the ALJ correctly noted the discrepancies among the x rays and MRIs.

Plaintiff also contends that according to *Hines v. Barnhart*, 453 F.3d 561 (4th Cir. 2006), "the ALJ was not at liberty to reject [Plaintiff's] allegations regarding the extent of her functional limitations stemming from [her] conditions" since she satisfied step one of the two step *Craig* analysis by showing that the objective medical evidence indicates that her conditions reasonably likely cause the pain alleged. (Docket Entry 10 at 11.) However, as previously reasoned by this district

> [*Hines*] holds only that, at part two of the credibility assessment, 'subjective evidence of the pain, its intensity or degree *can*, by itself, support a finding of

8

disability.' *Hines*, 453 F.3d at 563. In other words, under the appropriate circumstances, an ALJ *may* choose to rely exclusively on a claimant's subjective complaints to find disabling pain at part two of the credibility assessment. However, *Hines* does not *compel* ALJs to consider only subjective evidence at part two of the credibility assessment, as such a requirement conflicts with the regulations, which plainly require ALJs to consider a variety of factors in evaluating the intensity, persistence, and limiting effects of pain.

*Mason v. Colvin*, No. 1:13CV1150, 2015 WL 4460348, at *5 (M.D.N.C. July 21, 2015) (unpublished) (emphasis in the original). Thus, the ALJ properly took into account medical signs and laboratory findings, daily activities, testimony about the nature and location of pain, medication and other treatment used to alleviate pain, along with medical opinions from examining and non-examining sources to assess Plaintiff's credibility at step two of the *Craig* analysis.

Lastly, Plaintiff asserts that the ALJ failed to mention that the reason Plaintiff did not use the medication Tramadol (Ultram) was because it did not help her pain. (Docket Entry 10 at 6.) The record indicates that Tramadol and Vicodin provide mild relief. (Tr. 369.) While the medication only provides mild relief, Plaintiff tolerated more pain than she would have if she had taken the medication. In any event, failure to mention that the medication only had a mild positive effect was harmless error. "[T]here is no reason to believe that but for the presumed error, this case would resolve differently." *Toms v. Colvin*, No. 1:10CV856, 2014 WL 509195, at *10 (M.D.N.C. Feb. 7, 2014) *report and recommendation adopted*, No. 1:10CV856, 2014 WL 1338270 (M.D.N.C. Apr. 1, 2014) (unpublished).

B. Function by Function Analysis

Next, Plaintiff contends that the ALJ failed to properly conduct a function by function

9

analysis of the relevant contested functions when assessing the RFC. (Docket Entry 10 at 12-14.) In particular, Plaintiff asserts that "the ALJ did not perform a function by function analysis of the contested functions of walking, standing, sitting, lifting and bending." (*Id.* at 13.)

"[T]he process for assessing [the] RFC is set out in Social Security Ruling 96-8p." *Monroe v. Colvin*, No. 15-1098, 2016 WL 3349355, at *9 (4th Cir. June 16, 2016) (unpublished) (citing *Mascio*, 780 F.3d at 636). According to Social Security Ruling 96-8p "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis" including the functions listed in the regulations. SSR 96-8P, 1996 WL 374184, at *1. "Only after such a function-by-function analysis may an ALJ express RFC in terms of the exertional levels of work." *Monroe v. Colvin*, 2016 WL 3349355, at *9 (internal quotations and citations omitted).

The Fourth Circuit has addressed whether an ALJ's failure to articulate a function-by-function analysis necessitates remand. *Mascio*, 780 F.3d at 636–37. In *Mascio* the Court stated "that a per se rule is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are irrelevant or uncontested." *Id.* at 636. However, "remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* In addition, "[a]n ALJ may satisfy the function-by-function analysis requirement by referencing a properly conducted analysis of state agency consultants." *Herren v. Colvin*, No. 1:15-CV-00002-MOC, 2015 WL 5725903, at

10

*5 (W.D.N.C. Sept. 30, 2015) (unpublished).

Here, although the ALJ does not conduct a function by function analysis, it is apparent how the ALJ determined Plaintiff's capacity to preform relevant functions. The ALJ gave significant weight to the opinions of state agency consultants, Robert N. Pyle, M.D. and E. Woods, M.S., M.D. and described the limitations found in their assessments in his decision. (Tr. 20.) As mentioned above, a proper function by function analysis conducted by a state agency consultant can satisfy an ALJ's requirement to conduct a function by function assessment. *Herren*, 2015 WL 5725903, at *5. Both state agency consultants found that Plaintiff could occasionally lift 20 pounds, lift 10 pounds frequently, stand and/or walk about 6 hours in an 8-hour workday, stoop, kneel, crouch, crawl, stand and occasionally climb and balance. (Tr. 61-62, 84-85.) These function by function assessments, that the ALJ gave great weight, provide support for the ALJ's RFC determination and allow the Court to conduct a meaningful review of the ALJ's analysis. *Cowles v. Colvin*, No. 1:15CV105, 2016 WL 527063, at *5 (M.D.N.C. Feb. 9, 2016) (unpublished) (reasoning that although the ALJ did not conduct a complete function by function analysis, the ALJ gave great weight to the opinions of the state agency consultant and explained that he did so because he found the opinions consistent with the other evidence in the record thereby removing the need to rehash a discussion of the state agency consultant's opinion); *Wilds v. Colvin*, No. 1:13CV318, 2015 WL 339643, at *9 (M.D.N.C. Jan. 23, 2015), *report and recommendation adopted*, No. 1:13CV318, 2015 WL 1033009 (M.D.N.C. Mar. 9, 2015) (unpublished) ("the ALJ gave weight to the opinion of the non-examining state agency physician who assessed Plaintiff's work related limitations on a

function by function basis. The ALJ was not required to repeat these findings verbatim.") (internal citations and quotations omitted); *see also Schlossnagle v. Colvin*, No. TMD 15-935, 2016 WL 4077672 *8 (D.M. Aug. 1 2016); *Linares v. Colvin*, No. 5:14-CV-00120, 2015 WL 4389533, at *3 (W.D.N.C. July 17, 2015) (unpublished) ("Because the ALJ based his RFC finding, in part, on the function-by-function analysis of the State agency consultant, the ALJ's function-by-function analysis complied with SSR 96-8p."). The RFC almost mirrors the findings of the state agency consultants. Further, in light of evidence that was not seen by the state agency consultants, the ALJ added additional restrictions by providing a sit/stand option in the RFC explaining his reasons for doing so. (Tr. 20.) *Shore v. Colvin*, No. 1:10CV238, 2013 WL 1320504, at *2 (M.D.N.C. Mar. 29, 2013) (unpublished) (upholding the ALJ's decision notwithstanding the fact that the ALJ did not conduct a function by function analysis because the ALJ largely adopted and described the state agency physicians' RFCs and placed even greater limitations on the plaintiff in the RFC).[3] Thus, the ALJ's failure to conduct a function by function analysis does not require remand.

---

[3] The Court notes that in *Monroe* the Fourth Circuit recently addressed the ALJ's obligation to do a function by function analysis. *Monroe*, 2016 WL 3349355, at *9-10. The Court held that the ALJ should consider all of the plaintiff's "physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect his ability to work." *Id.* at 10. However, the Court has acknowledged that failure to conduct a function by function analysis alone "is not enough to require remand." *Harrison v. Colvin*, No. 5:15-CV-00108-MOC, 2016 WL 3679294, at *4 (W.D.N.C. July 11, 2016) (unpublished); *Mascio*, 780 F.3d at 636. In *Monroe*, the ALJ failed to address the claimant's testimony that he would lose consciousness about two or three times per day and needed to take several breaks during the day to battle being fatigued. Here, the ALJ's credibility assessment addresses Plaintiff's testimony about hip pain, carpal tunnel syndrome and degenerative joint disease. (Tr. 19.) Furthermore, as explained above the ALJ's failure to conduct a function by function analysis is harmless because the ALJ gave great weight to the function by function assessments of the non-examining consultants thereby allowing the Court to conduct meaningful review of the ALJ's analysis.

12

Plaintiff also asserts that the ALJ did not draw a logical bridge between the evidence and the functional assessments provided in the RFC by summarizing the medical evidence in the record. (Docket Entry 10 at 9; Docket Entry 13 at 1-2.) However, as detailed above, after the ALJ summarized the evidence he conducted a proper credibility analysis. In addition, the ALJ discussed the weight given to the opinion evidence including giving great weight to the state agency consultants. *Cowles*, 2016 WL 527063, at *5; *Shore*, 2013 WL 1320504, at *2. This analysis provides a logical bridge between the evidence and the ALJ's RFC findings. Thus, the ALJ did not merely summarize the objective medical evidence.

C. The ALJ Correctly Assessed the Medical Opinion Evidence

The Plaintiff contends that the ALJ erred in his evaluation of the medical opinion evidence because he did not consider and assign weight to the medical opinion of Dr. DiMichele. (Docket Entry 10 at 14-16; Docket Entry 13 at 2-3.) "[A]n ALJ labors under no obligation to comment on (let alone explicitly weigh) every piece of medical evidence in the record." *Hose v. Colvin*, No. 1:15CV00662, 2016 WL 1627632, at *4 (M.D.N.C. Apr. 22, 2016) (unpublished) (citing *Reid v. Commissioner of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)). Nonetheless, the ALJ must weigh every medical opinion received regardless of its source. *Hose*, 2016 WL 1627632, at *4; *Collins v. Astrue*, No. 1:10CV189, 2011 WL 6440299, at *2 (W.D.N.C. Dec. 21, 2011) (unpublished). A medical opinion has a distinct definition. "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms,

13

diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); *Hose*, 2016 WL 1627632, at *4; *Dixon v. Barnhart*, No. 1:04-CV-00921, 2007 WL 6515463, at *4 (M.D.N.C. Oct. 3, 2007), *aff'd sub nom. Dixon v. Astrue*, 288 F. App'x 67 (4th Cir. 2008) (unpublished); 20 C.F.R. § 416.927(a)(2). Furthermore, opinions finding that a claimant is disabled or unable to work are opinions regarding matters reserved to the Commissioner. *Carter v. Colvin*, No. 1:13CV334, 2016 WL 1735885, at *13 (M.D.N.C. May 2, 2016) (unpublished); *Ballard v. Colvin*, 90 F. Supp. 3d 470, 477 (M.D.N.C. 2015) (unpublished).

Here, the ALJ clearly considered Dr. DiMichele's findings. The ALJ described the physical examination conducted by Dr. DiMichele noting that Plaintiff "had a positive straight leg test on the right, pain with movement, obvious gait impairment, and vaginal pain with no point tenderness but appeared to be in the posterior in the region of her prior surgery." (Tr. 16, 310.) The ALJ also noted that Dr. DiMichele diagnosed Plaintiff with sprain of the hip and thigh, as well as pelvic and joint pain. (Tr. 16, 310.) In addition, the ALJ explained that Dr. DiMichele recommended a course of physical therapy and referred Plaintiff to the University of North Carolina Hospital for further evaluation. (Tr. 16, 311.)

Additionally, Dr. DiMichele stated in her physical examination notes that "due to the severity of hip pain/ hip injury and ongoing pelvic pain [Dr. DiMichele does] not feel [that Plaintiff] may return to work. [Plaintiff] has had a severe decline in her daily functioning." (Tr. 315.) As noted above, opinions regarding whether the claimant is disabled or unable to work are opinions concerning issues reserved to the Commissioner. Therefore, Dr.

14

DiMichele's conclusion that Plaintiff is not able to work is an opinion that the ALJ is not required to weigh. *Carter*, 2016 WL 1735885, at *13 ("Dr. Tellez's opinion that Plaintiff 'is quite disabled' does not qualify as a 'medical opinion' generally entitled to deference . . . Instead, Dr. Tellez's statement constitutes a legal opinion to which the ALJ owed no deference"); *Ballard*, 90 F. Supp. 3d at 477 (finding that the ALJ correctly addressed a treating psychologist's medical opinions as to the claimant's employability and functional limitations and properly disregarded the psychologist's opinion as to whether the claimant was disabled or unable to work).

Additionally, it is unclear whether Dr. DiMichele's statement that "[Plaintiff] has had a severe decline in her daily functioning" and her conclusion that Plaintiff has severe hip and pelvic pain are sufficient to constitute a medical opinion. (Tr. 315.) Dr. DiMichele's statement regarding the decline in Plaintiff's daily function is vague and fails to detail any of Plaintiff's functional limitations, nor does it reveal what Plaintiff can still do despite her impairments. *Hose v. Colvin*, No. 1:15CV00662, 2016 WL 1627632, at *4 (M.D.N.C. Apr. 22, 2016) (internal citation omitted) (reasoning that a radiologist's conclusion that a MRI revealed that the plaintiff had multiple impairments was not a medical opinion because it did not offer "judgments about' Plaintiff's 'prognosis,' what she can still do despite her impairments' or her physical or mental restrictions'"); *see also Birchfield v. Colvin*, No. 1:15CV53, 2016 WL 3566740, at *3 (W.D.N.C. June 30, 2016) (finding that the ALJ did not have to adopt the findings of the plaintiff's physicians because the physicians did not offer judgments regarding her ability to perform specific work-related functions or limitations resulting from her impairments). *Cf.*

15

*Whitaker v. Colvin*, No. 1:13CV423, 2015 WL 9274932, at *5 (M.D.N.C. Dec. 18, 2015) (concluding that a physician's opinion "regarding Plaintiff's ability to perform work-related functions, such as . . . occasional postural movements, and a 30-minute cap on sitting, standing, and walking at one time . . . fall squarely with the . . . definition of "medical opinion"").

Even if Dr. DiMichele's findings constitute an opinion, the ALJ's failure to weigh the opinion is harmless. Dr. DiMichele's findings regarding Plaintiff's severe hip and pelvic pain and decrease in daily functioning were consistent with the assessments of the state agency consultants that the ALJ gave great weight. (Tr. 66, 68-69, 81, 92.) The consultants still determined that Plaintiff could perform light work. The only inconsistency between Dr. DiMichele's and the state agency consultants' findings is Dr. DiMichele's conclusion that Plaintiff cannot work which, as determined above, is an issue reserved to the Commissioner. *Morgan v. Barnhart*, 142 F. App'x 716, 723 (4th Cir. 2005) (finding that the ALJ's failure to weigh the assumed medical opinion was harmless because it included the same limitations as another examination relied on by the ALJ); *see also Yuengal v. Astrue*, No. 4:10-CV-42-FL, 2010 WL 5589102, at *9 (E.D.N.C. Dec. 17, 2010), *report and recommendation adopted*, No. 4:10-CV-42-FL, 2011 WL 147297 (E.D.N.C. Jan. 18, 2011), *aff'd*, 441 F. App'x 168 (4th Cir. 2011) (finding the ALJ's failure to weigh a medical opinion harmless because the opinion was identical to another opinion in the record addressed by the ALJ). Furthermore, during the same visit that Dr. DiMichele concluded that Plaintiff would not be able to return to work, Plaintiff denied muscle and joint pain, muscle weakness, incoordination, tingling, and numbness. (Tr. 313, 15.) Moreover, as noted by the ALJ, the only function by function

assessments in the record were conducted by the state agency consultants.  *See Rivera v. Colvin*, No. 5:11-CV-569-FL, 2013 WL 2433515, at *5 (E.D.N.C. June 4, 2013) (unpublished) (concluding that the ALJ's failure to weigh an opinion was harmless because it "[did] not state that plaintiff is more limited in her functioning than that expressed in the ALJ's RFC determination, which takes into account plaintiff's limitations and was supported by substantial evidence in the record").  In addition, the ALJ clearly considered Dr. DiMichele's findings because he detailed them in his discussion of the medical evidence.  *See Joines v. Colvin*, No. 3:14-CV-00396-MOC, 2015 WL 1249579, at *5 (W.D.N.C. Mar. 18, 2015) (finding the ALJ's failure to weigh an opinion harmless because the ALJ's decision discussed the physician's findings and noted that there were no medical opinions indicating disability and no function by function assessments preventing the plaintiff from performing light work); *Hitchens*, 2014 WL 6977765, at *4 (finding that it was harmless error for the ALJ to not weigh the physicians' reports because the ALJ discussed the reports at length in his decision and clearly relied on the physicians' reports in making the RFC determination).  Therefore, failure to weigh Dr. DiMichele's findings, at most, was harmless error.

17

Case 1:16-cv-00028-CCE-JLW   Document 14   Filed 08/09/16   Page 17 of 18

## V. CONCLUSION

For the reasons stated herein, this Court **RECOMMENDS** that Plaintiff's Motion for Judgment Reversing the Commissioner (Docket Entry 9) be **DENIED**, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 11) be **GRANTED**, and that the final decision of the Commissioner be upheld.

Joe L. Webster
United States Magistrate Judge

August 9, 2016
Durham, North Carolina